UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LISA BONTA,<br><br>       Plaintiff,<br><br>  vs.<br><br>WASHOE COUNTY et al.,<br><br>       Defendants. | 3:18-cv-00012-RCJ-WGC<br><br>**ORDER** |

This case arises out of the treatment of a disabled witness by first responders at the scene of a shooting. Pending before the Court are two motions to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

In the early morning hours of October 22, 2017, Plaintiff Lisa Bonta's estranged husband Johnny was shot dead after a night of drinking in and around Plaintiff's apartment and a resulting confrontation with the police. (Compl. ¶¶ 6–10 & n.2, ECF No. 1). The shooting itself is not the basis of the lawsuit, but rather Plaintiff's treatment by personnel at the scene.

At or about 4 a.m., Plaintiff, her service dog, and her 16-year-old daughter Marissa were "hurried into a nearby ambulance." (*Id.* ¶ 11). Marissa called her 33-year-old sister Jill to inform her of the situation, and when Jill arrived, a Reno Police Department ("RPD") officer told her Plaintiff and Marissa were in the ambulance. (*Id.* ¶ 12). Jill explained that Plaintiff had stage 4

breast cancer and needed her medications and oxygen, and the officer told her there was oxygen in the ambulance. (*Id.*). Another RPD officer told Jill she had to leave the area, so she did. (*Id.*). Also at or about 4 a.m., Plaintiff called her son Bryce to inform him of the situation, and when he arrived at about 4:50 a.m., he told an RPD officer he was there to check on his mother, explaining her medical situation, to which the officer replied that it was an active crime scene, so he couldn't give Bryce any information. (*Id.* ¶ 14). Bryce left, as instructed by the officer, and called Jill to discuss the situation. (*Id.*).

At or about 5 a.m., Plaintiff told an officer she needed her medications and oxygen, and he said another officer would come speak to her. (*Id.* ¶ 15). At or about 6 a.m., she made another request for her medications and oxygen, and an "official" told Plaintiff, "We will get someone." (*Id.* ¶ 17). By then, Plaintiff was in physical distress and extreme pain; her muscles were cramping from lack of oxygen, she was cold and barefoot without a coat, and her morphine pain pump was in her apartment. (*Id.* ¶ 17). At about 6:45 a.m., RPD Detective McQuattie asked for Plaintiff's and Marissa's names and social security numbers and explained they would be taken to SPD ("Sparks Police Department") to receive "everything they needed." (*Id.* ¶ 18). He repeated this assurance when Plaintiff asked for her medications and oxygen again at about 7 a.m. (*Id.* ¶ 19). About 30–45 minutes after they arrived at SPD at about 7:15 a.m., McQuattie told Plaintiff nothing could be removed from the apartment for up to 24 hours but he would see what he could do. (*Id.* ¶ 20).

At about 8 a.m., Washoe County Sheriff's Office ("WSCO") Detective McVickers introduced himself to Plaintiff and Marissa and took Plaintiff away separately for questioning. (*Id.* ¶ 21). Plaintiff asked him about her medications and oxygen, and McVickers replied that nothing could be removed from the apartment for up to 24 hours but he would see what he could

do. (*Id.* ¶ 21). McVickers and McQuattie then interviewed Plaintiff for 2–3 hours. (*Id.* ¶¶ 21, 24). When asked about Plaintiff's oxygen and medications, they repeated that nothing could be removed from the apartment for up to 24 hours but they would see what they could do. (*Id.* ¶ 24). Jill and Bryce were refused entry to the apartment by police at about 8:15 a.m. because it was an active crime scene. (*Id.* ¶¶ 25–27). When Jill and Bryce arrived at SPD, they contacted WSCO Officer Buell, as instructed at the scene, and he told them Plaintiff was being interviewed and that they were working on getting someone to bring the medications and oxygen, but nothing had been done by the time Plaintiff finished her interview at 10:30 or 11 a.m. (*Id.* ¶¶ 27–30). At that time, Plaintiff told Buell exactly which items were needed and where they were in the apartment, and Buell said he would make some calls once Marissa's questioning was done. (*Id.* ¶ 30). When Marissa's interview was done at about 11:30 a.m., McVickers took this information from Plaintiff, as well, and said he would make a call. (*Id.* ¶ 31).

Plaintiff went to Bryce's house to rest, and Jill stayed at SPD to wait for her mother's items. (*Id.* ¶ 32). At about 12:45 p.m., an RPD officer gave Jill a paper bag with dirty clothes and Plaintiff's purse but no medications or oxygen, telling her she would get the other things when she got the keys to the apartment, which could be up to 24 hours. (*Id.*). Jill received a call from SPD at about 5 p.m. informing her she could retrieve the keys to the apartment. (*Id.* ¶ 33). Jill and her mother arrived at the apartment at about 6 p.m. (*Id.*).

Plaintiff has sued Washoe County ("the County") and the City of Reno ("the City") for failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. The County and the City have separately moved to dismiss.

///

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency, *see N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), and dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court treats factual allegations as true and construes them in the light most favorable to the plaintiff, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), but does not accept as true "legal conclusions . . . cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A plaintiff must plead facts pertaining to his case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" if not "subject to reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.    ANALYSIS

The County first asks the Court to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). The County argues that *Younger* abstention is required when there is a "parallel, pending state criminal proceeding." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The Court rejects this argument. The Court's consideration of the present claims would in no way interfere with any parallel state criminal proceedings. Plaintiff's deceased husband cannot be prosecuted, and Defendant does not appear to argue Plaintiff faces any prosecution related to the events underlying her civil claims in the present case. Although the importance of Defendants' control over the scene of a homicide is undoubtedly relevant to a determination of the reasonableness of Defendants' actions in the context of a reasonable accommodation claim, that issue is separate from the antecedent jurisdictional question.

Next, the County argues that Plaintiff's theory under the ADA and RA fails, that she was unlawfully denied the right to "meaningfully participate in the interview and questioning phase of the investigation" of her husband's death. Defendant is correct that Plaintiff alleges no facts

making out a plausible violation of the reasonable accommodation requirement, even assuming Plaintiff has such a right. Plaintiff's allegations concern the delay of access to her medications and oxygen, not any inability to participate in the investigation. Indeed, her hours-long interview with police—which was clearly a meaningful opportunity to participate in the investigation, even assuming she had such a right—is part-and-parcel to her grievance about that delay. The Court rejects the legal theory, anyway. Participation in a police investigation is not a "benefit of some public entity's services, programs, or activities." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). As the County also notes, Plaintiff nowhere alleges that she requested oxygen or medications generally from medical personnel in the ambulance and was "denied" them, assuming treatment by the relevant medical personnel was a "public benefit" for the purposes of the ADA. She only alleges that she was temporarily denied access to her own property at the scene of a homicide while police secured and investigated it. She admits her daughter was told the ambulance she was in had oxygen and nowhere alleges she requested to use it.

The Court dismisses the ADA claim, and the RA claim, *see Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045, n.11 (9th Cir. 1999), with leave to amend. The Court grants the City's motion, with leave to amend, as well, for the same reasons. Upon amendment, Plaintiff must focus her allegations not on the denial of access to her own property in particular, but on failure to accommodate her while in custody generally, i.e., failure to provide oxygen and pain killers. Insofar as Plaintiff demanded access to property at the crime scene, the Court finds that Defendants have shown that permitting access before the scene was fully investigated would have fundamentally altered the nature of the police investigation, because any meddling with a crime scene could cause evidence to be altered or lost. *See id.* at 1047. That does not negate any

possible claim here—Defendants may have had a duty to accommodate Plaintiff's disability

through some other means, e.g., via medical personnel at the scene with their own equipment or

immediate transportation to the hospital—but Plaintiff cannot rely on denial of access to her

property at the scene of a homicide to show a violation.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 7, 9) are GRANTED,

with leave to amend within twenty-one (21) days.

IT IS SO ORDERED.

Dated this *24th day of July 2016*

_____

ROBERT C. JONES
United States District Judge